UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KELLY ANN GLYNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 16-CV-10145-LTS |
| ) | |
| CAROLYN W. COLVIN, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

February 6, 2017

SOROKIN, J.

Kelly Glynn submitted an application for disability insurance benefits on January 22, 2014, and an application for supplemental security income on February 6, 2014, claiming an alleged onset date of July 10, 2011. R. at 20. Glynn's claims were denied initially on May 14, 2014, and on reconsideration on September 30, 2014. Id. Glynn requested a hearing before an ALJ but did not appear at the hearing. Id. The ALJ denied Glynn's claims on May 26, 2015. R. at 35. The ALJ found at step one that Glynn had not engaged in substantial gainful activity since July 10, 2011, R. at 22; at step two that Glynn had multiple severe impairments, R. at 22; at step three that those impairments did not meet the definition of a severe impairment or combination of impairments under the regulations, R. at 23; at step four that Glynn's RFC allowed for light work except she could only occasionally stoop or crouch which did not allow her to do her past relevant work, R. at 25, 34; and at step five that jobs existed in significant numbers in the national economy that Glynn could perform, R. at 35.

1

On August 14, 2015, the Appeals Council denied Glynn's request for review. R. at 10. Glynn then filed this action seeking judicial review by the Court pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the Court DENIES Glynn's Motion to Reverse, Doc. No. 15, and ALLOWS the Defendant's Motion to Affirm, Doc. No. 16.

ANALYSIS[1]

A. Standard of Review

The Court's jurisdiction is limited to reviewing the Administrative Record to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind, reviewing the evidence in the record as a whole, could accept as adequate to support a conclusion. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Determinations of credibility and the resolution of conflicts in the evidence are for the Commissioner and not for the doctors or for courts. Id.; see Richardson v. Perales, 402 U.S. 389, 399 (1971).

Nevertheless, administrative findings of fact are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). If the Court finds that the Commissioner's decision is based on legal error or is not supported by substantial evidence, it has the power to modify or reverse the Commissioner's decision, with or without remanding for rehearing. 42 U.S.C. § 405(g).

---

[1] In the interest of brevity, the Court will relate the factual background only where it is relevant to the analysis. The Court has considered the entire record and adopts the ALJ's findings of facts.

Where, as is the case here, the Plaintiff is pro se, "the [C]ourt holds her pleadings to less stringent standards than formal pleadings drafted by lawyers and will interpret [Glynn's] pleadings to raise the strongest arguments that they suggest." Tefera v. Colvin, 61 F. Supp. 3d 207, 214 (D. Mass. 2014) (first alteration in original) (citations omitted) (quoting Ming v. Astrue, No. 07-4567, 2009 WL 2495947, at *4 (E.D.N.Y. Apr. 13, 2009)). Under a liberal reading of Glynn's Motion to Reverse, Doc. No. 15, the Court sees the following arguments[2]: substantial evidence did not support the ALJ's RFC finding because he did not properly consider the opinion of Dr. Uzogara and because he denied her application due to her refusal to take medications; substantial evidence did not support the ALJ's finding at step four; and that substantial evidence did not support the ALJ's finding at step five that Glynn could still perform other jobs existing in significant numbers in the national economy.

B. ALJ's RFC Finding

Pursuant to 20 C.F.R. §§ 404.1520(e) and 416.920(e), the ALJ must determine a claimant's RFC, which is a claimant's ability to do physical and mental work on a sustained basis despite limitations from her impairments. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 CFR 404.1520(e), 404.1545, 416.945; SSR 96-8p. The ALJ formulated Prescott's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally stoop or crouch. She is able to sustain concentration, persistence and pace for 2-hour periods over the

---

[2] Glynn makes the following statement in her motion: "A victim of Religious Discrimination (29 C.F.R. 1605.1) 'The Biblical Basis of Veganism." Doc. No. 15 at 2. The cited section of the Code of Federal Regulations applies to the EEOC and workplace discrimination claims, not to Social Security benefits. Regardless, the Court does not consider this to be a properly raised argument.

3

course of an 8-hour workday and 40-hour workweek. She is able to manage appropriate, superficial interactions in the workplace and respond to supervision.

R. at 25.

Glynn's argument is difficult to ascertain but the Court understands her to be arguing that the ALJ erred in analyzing her RFC because she did not take medications and because the ALJ did not properly consider the opinion of Dr. Uzogara.

An ALJ must "always consider the medical opinions in [the] case record." 20 C.F.R. § 404.1527(b). Under the "treating source rule," the ALJ should generally give "more weight" to the opinions of "treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2). "Generally, a treating source's opinion on the nature or severity of impairments is given controlling weight if well-supported by medically acceptable clinical techniques and consistent with other substantial evidence in the record." McNelley v. Colvin, No. 15-1871, 2016 U.S. App. LEXIS 10155 (1st Cir. April 28, 2016) (citing 20 C.F.R. § 404.1527(c)(2)). The Social Security Regulations provide that:

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see SSR 96-2p, 1996. Conversely, the ALJ may discount the weight given to a treating source opinion where it is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining and

non-examining physicians. Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004); 20 C.F.R. § 404.1527(c)(2)-(4); see also SSR 96-2p, 1996 WL 374188, at *2.

When an ALJ finds that no treating source opinion is entitled to controlling weight, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). However, an ALJ is not required to address each of the factors provided in § 404.1527(c)(2). McNelley at *4. The ALJ need only provide "good reason" for giving a treating physician's opinion minimal weight. Id.

"It is well established in this circuit that an ALJ may accord substantial weight to the opinions of non-treating medical reviewers." D.A. v. Colvin, Civ. A. No. 11-40216, 2013 WL 5513952, at *7 (D. Mass. Sept. 30, 2013) (citing Quintana v. Comm'r of Soc. Sec'y, 100 Fed. App'x 142, 144 (1st Cir 2004)). "An ALJ can assign more weight to non-examining medical reviewers even where these opinions contradict the opinion of treating physicians." Id. (citing Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)). "[I]f the hearing officer comes to a conclusion contrary to that of the treating physician and alternatively adopts the opinion of a non-examining source, then this court must uphold his decision as long as a 'reasonable mind, reviewing the record as a whole, could accept it as adequate to support his

5

conclusion.'" Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass. 2007) (quoting Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).

The ALJ discussed and properly considered the opinions in the record. The ALJ noted that Glynn had "not provided any treating source statement of physical limitation, and no treating source ha[d] advised the claimant to limit her physical activities in any manner." R. at 32. As to Dr. Uzogara, the ALJ noted that he gave "very little weight" to Dr. Uzogara's letter because "there are no records of any treatment by Dr. Uzogara and his opinion is not supported by the medical evidence as a whole." R. at 34. The ALJ credited the opinions of Dr. Schaff and Dr. Astarjian, state agency consultants who found that Glynn was capable of light work but could only occasionally stoop or crouch. See R. at 51–52 (Dr. Schaff); R. at 80–81 (Dr. Astarjian).

Glynn argues repeatedly that she should not be penalized for refusing to take medication for pain. See, e.g., Doc. No. 15 at 1 ("I was not denied benefits for suffering the severity of my disability pains, I was denied for not taking the 'commonly prescribed medications?' Drugs."). But, as the ALJ correctly noted, the medical evidence indicates that Dr. Peterson and Dr. Yu both did not recommend narcotics for pain control because neither doctor thought the medication necessary. See R. at 286 (Dr. Yu noting that Glynn "does not require narcotics for pain control"); R. at 314 (Dr. Peterson recommending "conservative treatment . . . , with PT for stretching, ROM, modality treatment, and pain control"). Thus, the ALJ did not conclude that Glynn was not entitled to benefits because she refused medication; rather, the ALJ concluded that Glynn was not entitled to benefits because her doctors did not judge her pain to be sufficient to require medication and recommended only conservative treatment. That conclusion is supported by substantial evidence.

C. ALJ's Step Four Finding

Glynn asserts that her conditions "[m]ak[e] it even harder for a woman over 50 to do past work . . . ." Doc. No. 15 at 3. As the Commissioner points out, the ALJ agreed that Glynn could not perform her past relevant work. The ALJ noted that Glynn's past relevant work as a mold maker and home attendant are classified "respectively as skilled and semi-skilled occupations requiring heavy and medium levels of exertion." R. at 34. As the ALJ and Glynn agreed on this point, Glynn has shown no error.

D. ALJ's Step Five Finding

At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey, 276 F.3d at 5. "The opinion of a vocational expert that a Social Security claimant can perform certain jobs qualifies as substantial evidence at the fifth step of the analysis." Sousa v. Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011). However, "[i]f the occupational base is significantly limited by a nonexertional impairment, the Secretary may not rely on the Grid to carry the burden of proving that there are other jobs that the claimant can do." Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991). As discussed above, the RFC was supported by substantial evidence. The ALJ properly considered whether Glynn's additional limitation of being able to stoop or crouch only occasionally would significantly erode the occupational base for light work and concluded that it would not. R. at 35; see SSR 83-14 1983 WL 31254, at *2 ("[T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally . . . ."). The ALJ committed no error in his analysis at step five.

CONCLUSION

For the reasons stated, this Court DENIES Glynn's Motion to Reverse, Doc. No. 15, and ALLOWS the Defendant's Motion to Affirm, Doc. No. 16.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge